IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHAVONNE E. WHEELER                                                                                       PLAINTIFF

        v.                                              Civil No. 10-2111

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                                        DEFENDANT

**MEMORANDUM OPINION**

**I.**      **Factual and Procedural Background**

       Plaintiff, Shavonne Elizabeth Wheeler, appeals from the decision of the Commissioner of the Social Security Administration denying her claims for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), pursuant to §§ 216(I) and 223 of Title II of the Social Security Act, 42 U.S.C. §§ 416(I) and 423(d), and § 1602 of Title XVI, 42 U.S.C. § 1381a, respectively (collectively, "the Act").  42 U.S.C. §405(g).

       Plaintiff protectively filed her DIB and SSI applications on September 18, 2006, alleging a disability onset date of June 11, 2005, due to congenital deformity of the right upper extremity (Poland syndrome), curvature of the spine (scoliosis), back pain, neck pain, shoulder pain, hip pain, arm and finger pain, numbness in the hands, arms, legs and feet, joint pain, severe headaches, and asthma.  T. 65, 92-100, 137.  At the time of the onset date, Plaintiff was twenty four years old and possessed a General Equivalency Degree (G.E.D.), having dropped out of high school in the 11th grade.  T. 19, 22.  She had past relevant work as a housekeeper.  T. 112.  Plaintiff's applications were denied at the initial and reconsideration levels.  T. 58, 61, 66, 68.  At Plaintiff's request, an administrative hearing was held in Fort Smith, Arkansas, on August 21, 2008, at which Plaintiff,

1

a lay witness, and a vocational expert testified. T. 14-42.  Administrative Law Judge ("ALJ") Larry D. Shepherd issued an unfavorable  decision on October 23, 2008, finding that Plaintiff was not disabled within the meaning of the Act.  T. 40-56.  On June 10,  2010, The Appeals Council found no basis to reverse the ALJ's decision. T.1. Therefore, the ALJ's October 23, 2008,  decision became the Commissioner's final administrative decision.

**II.     Medical History**

Plaintiff was born with an underdeveloped right arm and right side of her chest, resulting in a diagnosis of Poland syndrome.[1]  She had no separation of her fingers on the right hand and underwent surgeries as a child to open up the webbing.  T. 207.  She has the ability to proximate the thumb and first finger but has essentially non-functioning digits two through five.  T. 207.  She has scoliosis, lacks some muscle in the right chest wall and has an underdeveloped right lung.  *Id.*  As a result of these congenital defects, Plaintiff's right arm is minimally functional and she suffers from back pain and asthma.  *Id.*

Plaintiff supplied an employee accident report from the University of Texas dated October 27, 2003, indicating she was pulling a bag of heavy trash from a room when she hurt her lower back and shoulder.  T. 231.  She was diagnosed with back and left trapezius strain.  T. 232.  She was prescribed Tylenol and Motrin for the pain.  *Id.*  At a followup visit, she told the doctor about her history of Poland Syndrome, that she had asthma and was diagnosed with scoliosis at the age of twelve.  T. 233.  Plaintiff told the doctor she did not feel that Poland Syndrome impaired her ability

---

[1] Named after Sir Alfred Poland, Poland anomaly (PA) is described as an underdevelopment or absence of the chest muscle (pectoralis) on one side of the body and webbing of the fingers (cutaneous syndactyly) of the hand on the same side (ipsilateral hand). Sometimes referred to as "Poland syndrome," it is an uncommon condition present at birth (congenital). For people born with PA, the breastbone portion (sternal) of the pectoralis is also missing.  http://www.genome.gov/14514230  (Last visited July 12, 2011).

to do the lifting required for her job. *Id.*

Plaintiff underwent a general physical examination with Dr. William G. Swindell on November 29, 2006, in a disability determination for the Social Security Administration. T. 200-208. Dr. Swindell noted that Plaintiff complained of constant back pain and has difficulty sitting down or standing up for any prolonged period of time. T. 207. He took down her history of Poland Syndrome, "significant scoliosis" and "chronic pain." *Id.* He described Plaintiff as "almost functionally one-handed." T. 208. Based on his evaluation, he assessed that Plaintiff was "moderately to severely limited, being unable to use the right hand and arm. The scoliosis and asthma aggravate/complicate all this." *Id.*

Plaintiff submitted to a pulmonary function study on February 20, 2007, at the Fort Smith Lung Center. T. 210-217. The computerized interpretation of her study indicated that "possible early obstructive pulmonary impairment is suggested....This finding can be due to a mild degree of small airway disease and/or the earliest stages of emphysema." T. 214. The nurse performing the function study noted that she "felt patient could have given better effort." T. 210.

Dr. Steve Owens provided a Physical Residual Functional Capacity Assessment of Plaintiff for the Administration on February 27, 2007. T. 218-225. Dr. Owens concluded that Plaintiff could occasionally lift 20 pounds; frequently lift 10 pounds; stand and/or walk about six hours in an eight hour day; not push or pull with her right arm. T. 219. He concluded that Plaintiff had no pustural limitations. T. 220. Dr. Owens reported that her ability to reach, handle, finger and feel were all limited in the right arm. T. 221. He cited no visual, communicative or environmental limitations. T. 221-222. Dr. Owens made a diagnosis of congenial deformity of the right upper extremity, with non-functioning digits 2-5 and atrophied arm and severe scoliosis. T. 225.

**III.     Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the Residual Functional Capacity ("RFC") to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production

4

then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**IV.**     **Discussion**

The ALJ determined that the claimant met the insured status requirements through December 31, 2010, that she had engaged in substantial gainful activity since June 11, 2005[2], and that she had severe impairments of congenital deformity of the right upper extremity (Poland Syndrome), curvature of the spine (scoliosis), and asthma. T. 52. The ALJ found, however, that the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. T. 53. The ALJ further found that Plaintiff's allegations regarding her limitations were not fully credible, and that the Plaintiff retained the residual functional capacity to perform unskilled, sedentary work. T. 53, 56.

Plaintiff filed this claim contending that the ALJ: failed to consider all of Plaintiff's impairments in combination, erred in his analysis and credibility findings in regard to the Plaintiff's subjective complaints of pain, erred in finding that the Plaintiff retains the residual functional capacity to perform sedentary work, and failed to fully and fairly develop the record. Pl.'s Br. at 2.

**A.**     **The ALJ Properly Considered the Combined Effects of Plaintiff's Impairments Supported by the Relevant Evidence.**

---

[2]The ALJ found that the claimant continued to work after June 11, 2005 at levels that constituted substantial gainful activity but that since the claimant stopped working in August 2005 and had not worked since that date, he continued with the sequential evaluation. T. 52.

5

Plaintiff first argues that the ALJ did not consider the claimant's impairments in combination, in violation of *Anderson v. Heckler*, 805 F.2d 801 (8th Cir. 1986) (requiring the claimant's impairments be considered in combination). *See also* 42 U.S.C. § 423(d)(2)(B).

Notably, the ALJ repeatedly used language which demonstrates consideration of the combined effect of Plaintiff's impairments. *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (upholding ALJ's opinion where ALJ listed all of the claimant's impairments and used language such as "the evidence *as a whole* does not show that the claimant's *symptoms* . . . preclude his past work").

Here, the ALJ repeatedly recognized his duty to consider all of Plaintiff's impairments in combination when setting forth the applicable law. The ALJ noted the duty at steps two and three, as well as in Plaintiff's RFC determination. At step two, the ALJ noted he must consider whether Plaintiff "has a medically determinable impairment that is severe or a *combination of impairments* that is severe." T. 51 (emphasis added). At step three, the ALJ stated he "must determine whether the claimant's impairment *or combination of impairments* meets or medically equals" a listed impairment. *Id.* (emphasis added). In addition, the ALJ separately discussed Plaintiff's impairments and subjective complaints of pain. The ALJ stated he "carefully considered the *entire record*" and "considered all symptoms and the extent to which *these symptoms* can reasonably be accepted as consistent with the objective medical evidence...." T. 53 (emphasis added). The ALJ's opinion sufficiently indicates the ALJ properly considered the combined effects of Plaintiff's impairments, and the ALJ properly considered the severity of the combination of Plaintiff's impairments. *See Hajek*, 30 F. 3d at 92.

B.      **The ALJ properly Discounted Plaintiff's Credibility.**

Plaintiff next argues that the ALJ erred in his analysis and credibility findings of Plaintiff's subjective complaints of pain. In evaluating a claimant's subjective complaints, the ALJ must consider five factors: (1) claimant's daily activities; (2) duration, frequency, and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Thus, the ALJ may discount the claimant's subjective complaints if they are inconsistent with the evidence as a whole. *See, e.g., Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (upholding ALJ's determination where claimant's activities were inconsistent with her subjective complaints of pain). Finally, "[t]he ALJ need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)).

In the present action, this Court finds the ALJ properly addressed and discounted Plaintiff's subjective complaints. In his opinion, the ALJ addressed the factors of 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929, and stated inconsistencies between Plaintiff's testimony and the record. T. 54-55. Specifically, the ALJ noted the following: (1) Plaintiff continued to work at substantial gainful activity levels after the alleged onset date. T. 54. (2) Plaintiff is able to perform the normal activities of daily living with little assistance. She testified that she takes her older children to school, cares for her baby, makes breakfast, cleans the house, dresses and bathes herself, grocery shops, drives. T. 27-30. (3) Plaintiff has suffered from asthma since the age of 12 but she smokes one pack of cigarettes per week, averaging up to four cigarettes a day. T. 55. The ALJ specifically took into account the assumption that plaintiff could not use her right upper extremity, despite the fact that Plaintiff testified she uses her arm "a lot." T. 21, 54.

These findings are valid reasons supporting the ALJ's credibility determination, and this Court finds the ALJ's credibility determination is supported by substantial evidence and should be affirmed. *See Lowe*, 226 F.3d 969, 971. Here, while the ALJ did not directly cite *Polaski,* which is the Eighth Circuit's preference, the ALJ cited and conducted an analysis pursuant to 20 C.F.R. §416.929, which mirrors in large part the *Polaski* factors. *See Schultz v. Astrue,* 479 F.3d 979, 983. Further, the ALJ thoroughly reviewed and discussed plaintiff's medical records and the opinion evidence offered. The ALJ also considered the numerous daily activities that plaintiff was able to perform and her statements about the pain she suffered and how her subjective complaints about pain were inconsistent with her daily activities. The Court finds that the ALJ adequately, if not expressly, applied the *Polaski* factors and discounted Plaintiff's subjective complaints of pain. *See Schultz* 479 F.3d at 983 (concluding that ALJ properly considered the *Polaski* factors even though the ALJ did not cite to *Polaski* directly). Accordingly, the ALJ did not err in discounting Plaintiff's subjective complaints of pain.

**C.    Substantial Evidence Supports the ALJ's RFC Assessment and the ALJ's Determination That Plaintiff Can Perform Other Work That Exists In Significant Numbers In the National Economy.**

The ALJ found that the Plaintiff had the residual functional capacity to perform sedentary work. T.53. Specifically, he found that she was able to lift and carry ten pounds occasionally and less than ten pounds frequently; sit for a total of six hours out of an eight hour work day; stand, and/or walk for a total of six hours out of an eight hour workday. She cannot push, pull, reach, handle, finger, or feel with her right upper extremity. *Id.*

A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. §

404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger v. Barnhart*, 390 F.3d 584, 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000). The Court notes that Plaintiff appears to place the burden of proof on the Commissioner. It is the claimant, however, who bears the burden of proving her physical restrictions and/or residual functional capacity. See *Geoff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005). In developing the record, the Commissioner is required to obtain additional medical examinations and/or testing only if the record does not provide sufficient medical evidence to determine whether the claimant is disabled. See *Barrett v. Shalala*, 38 F.3d 1019 (8th Cir. 1994)(citing, in part, 20 C.F.R. 404.1519a(b)). *See also Dozier v. Heckler*, 754 F.2d 274(8th Cir. 1985)(reversible error not to order consultative examination when such evaluation is necessary to make informed decision). 20 C.F.R. 404.1519a(b) identifies several instances in which additional medical examinations and/or testing is warranted. They include the following: (1) where the additional evidence needed is not contained in the records of the claimant's medical sources; or (2) where a conflict, inconsistency, ambiguity, or insufficiency in the evidence must be resolved and the Commissioner is unable to do so by re-contacting the medical sources.

The results of Plaintiff's consultative examination support the ALJ's RFC assessment. The physical examination revealed that Plaintiff had a full range of motion of her hips, knees, ankles,

9

cervical and lumbar spine, with scoliosis in the thoracic area.  T. 203.  Plaintiff had normal range of motion of her left shoulder, elbow, wrist, and hand but had limited range of motion with the right side in the same areas.  *Id.*   Plaintiff had muscle weakness and atrophy of her right arm, which was shorter than the left arm.  T. 204.  Plaintiff had no problems with her left arm.  T. 204, 207-208.  Plaintiff was able to squat and arise from a squatting position, performed all limb functions and manipulative maneuvers with the left but not with the right extremity, and was able to stand and walk, including walking on heels and toes, without any difficulty.   T. 204.  Plaintiff could hold a pen and write, oppose thumb to fingers, and pick up a coin with her left hand but not her right hand. *Id.*  Dr. Swindell found Plaintiff to be moderately to severely limited in her ability to use her right hand and arm but placed no limitations on her walking, standing, or sitting, even after consideration of her scoliosis and reports of pain.  T. 206.

     Plaintiff's testimony also supports the ALJ's RFC assessment.  She stated that she takes an albuterol inhaler and has no problems with her asthma.  T. 33.  Her day consists of making meals for herself and five children, tending to an infant, "constantly picking up" the house all day, and driving her children to and from school.  T. 27.  She does laundry and folds clothes, does dishes, sweeps, vacuums, and mops.  T. 29.  There are no household chores that she is incapable of doing physically.  T. 30.  She does all this with the help of her children and disabled friend.  T. 34.  It is appropriate for the ALJ to take a "functional approach" when determining whether impairments amount to a disability.  *Stormo v. Barnhart*, 377 F.3d 801 (8th Cir. 2004); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  That a claimant has medically-documented impairments does not necessarily result in a finding of disability.  See *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996).

     The medical evidence and Plaintiff's testimony support the ALJ's RFC assessment. Plaintiff

has presented no medical evidence to show that she cannot perform the residual functional capacity assessed by the ALJ. The ALJ specifically noted that the RFC takes into account the fact that Plaintiff cannot use her right arm. T. 54. This is generous given the fact that Plaintiff testified she uses the arm "a lot." T. 21.

In the present case, the ALJ considered the medical assessment of the agency medical consultant, Plaintiff's subjective complaints, and her medical records when he determined Plaintiff could perform sedentary work, subject to the limitations described above. Plaintiff provided no contrary RFC assessment by another physician, treating or otherwise. Thus, the ALJ had an adequate medical basis to find Plaintiff had the RFC to perform sedentary work with limitations. See *Moore v. Astrue,* 572 F.3d 520, 523-524 (8th Cir. 2009). Dr. Swindell's assessment was not contradicted by any other evidence in the record regarding Plaintiff's physical limitations. Based on the entire evidence of record, the Court believes there is substantial evidence to support the ALJ's RFC findings.

After finding that Plaintiff was unable to perform her past relevant work, the ALJ properly relied on vocational expert testimony to determine whether Plaintiff can perform other work available in the national economy. T. 55-56. *See* 20 C.F.R. §§ 404.1566(e), 416.966(e) (in determining disability, the Agency may use vocational expert testimony to determine whether a claimant can perform other occupations). The ALJ asked the vocational expert the following hypothetical question:

> Please assume a younger individual with a high school education, who can lift and carry 10 pounds occasionally and less than 10 pounds frequently. Individual can sit for a total of six hours in and eight hour workday, he can stand and walk for a total of less than two hours during an eight-hour workday. Individual cannot push or pull, reach, handle, finger, or feel with the right upper extremity. Based on this

11

hypothetical, would there be jobs available?  T. 39-40

The Vocational Expert responded that the hypothetical individual would be able to work in two sedentary, unskilled occupations:  escort vehicle driver (1,727 jobs available in Arkansas and 139, 021 jobs available nationally) and surveillance system monitor (76 available jobs in Arkansas and 13, 565 jobs available nationally).  T. 40.

The hypothetical questions posed by the ALJ in this case incorporated each of the physical impairments that the ALJ found to be credible, and excluded those impairments that were discredited or that were not supported by the evidence presented.  *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).  Accordingly, the ALJ's determination that Plaintiff could still perform work that exists in significant numbers in the national economy is supported by substantial evidence.

**D.**     **The ALJ Properly Developed the Record**.

In one part of her brief Plaintiff argues that the ALJ made "no effort to develop the record..." but in another that the record "admittedly could be better developed." Pl.'s Br. at 10,11.  The Court views this thin and vague premise as an attempt at a second bite at the RFC apple.

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). However,

the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

To begin with, Plaintiff has failed to establish that the medical records presented did not provide sufficient medical evidence to determine the nature and extent of her limitations and impairments. *See Barrett v. Shalala*, 38 F. 3d 1019, 1023 (8th Cir. 1994). The Agency ordered a consultative examination specifically to develop the record regarding Plaintiff's impairments. T. 200-208. The Plaintiff remarks that "If the ALJ had reservations or doubts regarding the medical evidence of record, he had an obligation to further develop the record to clarify any doubts which he may have had." Pl.'s Br. at 15. There is nothing in the ALJ's opinion to suggest that he had any doubts.

Finally, Plaintiff has failed to show she was in anyway prejudiced or treated unfairly by the ALJ, if the record was not in fact fully and fairly developed.

The Court finds the ALJ satisfied his duty to fully and fairly develop the record in this matter.

**V.    Conclusion**

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

ENTERED this 18th day of July, 2011.

*/s/ J. Marschewski*

HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE